Statement of the Case.
NICHOLLS, J.
Plaintiffs alleged that Charles Janvier, Gilbert H. Green, and George W. Young, residents of this city, liquidators of the Canal Bank & Trust Company, successor to the Canal Bank, a corporation organized under the laws of this state, and domiciled in this city, now in liquidation; Robert M. Walmsley, Sylvester P. Walmsley, and John F. Couret, likewise residing in this city, and liquidators of the Louisiana National Bank, a corporation organized under the laws of the United States and domiciled in this city, now in liquidation; and George Q. Whitney, James T. Hayden, and I. S. West, likewise residents of this city and liquidators of the Whitney National Bank, a corporation organized under the laws of the United States and domiciled in this city, now in liquidation — are indebted jointly and in solido to the city of New Orleans in the sum of $24,600.79, with interest from judicial demand, for this, to wit:
That pursuant to the duty in it vested by section 31 of Act No. 40, p. 59; of 1896, and subsequent acts amendatory thereof, the common council of the city of New Orleans did on the 8th day of May, 1900, elect viva voce the said Canal Bank, the said Louisiana National Bank, and the said Whitney National Bank, jointly and severally, fiscal agents of the city of New Orleans, to serve for a term of four years, and that accordingly the mayor of the city of New Orleans, acting under authority of Ordinance No. 20, N. O. S., did enter into a contract with the said banks, before Frederick Zengel, city notary, on the 30th day of June, 1900, carrying into effect the bid of said banks submitted by them previous to their election as such fiscal agents, a certified copy whereof is hereto annexed and made part hereof. That contract contained, among others, a clause by which said banks agreed in solido to pay “to the city of New Orleans 6% per cent, per annum upon the average amount of daily balances to the credit of the city treasurer.” Said banks further bound and obligated themselves “to advance to the city all the funds she may at any time need to meet her current municipal expenses under her. annual budget, the repayment of said advances to be secured by contract of pledge of the city’s uncollected revenues dedicated or appropriated to the items of municipal expenses to meet which such advances may have been made.” That thereafter the city of New Orleans and the said banks continued to do business with each other under the terms of said contract.
Now petitioner shows that the General Assembly of the state of Louisiana of the year 1902 adopted Act No. 12, p. 20, according to which the officers of the city of New Orleans elected in the month of November, 1899, and inducted into office in the month of May, 1900, were continued in such offices until the first Monday in December of the year 1904, and that accordingly the officers of the city of New Orleans, including its mayor, city council, and all other officials and employes, did actually continue to discharge their respective official duties until the first Monday in December, 1904; that the Canal Bank & Trust Company, the Louisiana National Bank, and the Whitney National Bank continued to do business with the city of New Orleans, as its fiscal agent during the entire time of the life of said administration — that is to say, up to the first Monday of December, 1904; and that they further continued to act as such fiscal agents up to the 10th day of March, *657 1903, when the new fiscal agent, haying been elected, by the city council, qualified and entered upon its duties as the present fiscal agent.
Petitioner further shows that the said fiscal agents complied with their obligations to pay interest at the rate of G>Vs per cent, per annum upon the average amount of the daily balances to the credit of the city treasurer from the 30th day of May, 1900, to the 30th day of May, 1904, but that said banks have never made a final settlement of accounts with petitioner, and now refuse to pay to petitioner interest upon the average daily balances on deposit with said fiscal agents from the 1st day of June, 1904, to the 10th day of March, 1905, on the plea that their contract with the city of New Orleans expired on said 1st day of June, 1904, and that thereafter the said city was only an ordinary depositor, and that said banks no longer served as fiscal agent.
Now petitioner shows that at no time during the interim between the 1st day of June, 1904, and the 10th day of March, 1905, was there any change in the official relations between petitioner and said fiscal agent, but that, on the contrary, the city of New Orleans deposited all of the funds covered by said contract with said fiscal agents, which profited by and received the benefit of the said funds, and said city continued to make such overdrafts and loans and to exercise such other rights as it enjoyed during the ex-, istence of the original contract between said city and its fiscal agent; that at no time did the said banks intimate to petitioner that their official relations were at an end, but, on the contrary, allowed petitioner to believe, and petitioner avers that it did believe, that the relations existing between the city of New Orleans and its fiscal agents under the contract before Frederick Zengel, on the 30th of June, 1900, were in full force and effect.
Petitioner shows that said Act No. 12, p. 20, of 1902, was a public statute of which the fiscal agents were bound to take cognizance; that the said banks had been elected to the position of fiscal agents by the city council; that they thereby became quasi public officers, amenable to the provisions of said statute; and that upon their failure to sever their official relations with petitioner at the expiration of their contract, or to notify petitioner or their changed relations, or to call to your petitioner’s attention the fact that they would in the future refuse to comply with the terms of said contract, such contract was tacitly renewed, and petitioner, having complied with its obligations thereunder, is accordingly justified in invoking the benefits accruing therefrom.
Now petitioner further shows that the aggregate of the average amount of daily balances on deposit with said three banks from the 1st day of June, 1904, to the 10th day of March, 1905, amounts to the sum of $147,009,400.02, and that the interest due jointly and in solido thereon by said fiscal agents under the contractual rate of interest, to wit, 6Vs per cent, per annum on amount of the average daily balances, amounts to the sum of $24,666.79; that amicable demand has been made upon said defendants for said amount, and same has been refused. Petitioner further shows that the present suit is instituted pursuant to the authority and direction of Ordinance No. 3402, N. O. S.,, adopted by the council of the city of New Orleans, of December 5, 1905.. A certified copy whereof is annexed hereto and made part hereof.
In view of the premises, petitioner prays that the liquidators of the Louisiana National Bank, the liquidators of the Whitney National Bank, and the liquidators of the Canal Bank & Trust Company be cited to appear and answer this demand, and that after due *659 proceedings had there he judgment in favor of petitioner, city of New Orleans, and against said defendants in their said capacity, jointly and in solido, in the full sum of $24,006.70 with interest from judicial demand. And petitioner further prays for costs and for general relief.
Defendants answered, denying all and singular the allegations of the petition. Further answering, they averred that they did enter into a contract with the city of New Orleans to become, and did act, as the fiscal agent of said city, from the 30th day of May, 1900, until the 30 th day of May, 1904, and that respondents have made full and final settlement with the said city of New Orleans in accordance with said contract and for the period aforesaid.
Further answering, respondents aver that the said contract was limited to a period of four years, and expired, according to its terms, on the 30th day of May, 1904, and was not extended beyond said period; nor was the relation existing between respondents and the said city of New Orleans as a result of the contract aforesaid continued or extended beyond the express period of limitation of said contract by the provisions of Act No. 12, p. 20, of 1902. And respondents specially deny that they occupied towards the city of New Orleans the relation of quasi public officers, which relation was subject to legislative control; but, on the contrary, respondents aver that their relation with the city of New Orleans arose and resulted solely from the contract aforesaid, and said relation expired at the time limited in said contract.
Further answering, respondents aver that from and after the 30th day of May, 1904, it was within the power of the city of New Orleans at any time to withdraw the deposit of its funds from the respondent banks, and that therefore the deposit of the said city of New Orleans ceased to be of the same value to respondents as under the said contract, and the respondents could not have paid, and could not have been expected to pay, the rate of interest in said contract provided for the deposit of moneys which might and could have been withdrawn at any time in their entirety by the city of New Orleans at its pleasure.
In view of the premises, respondents pray that plaintiff’s petition be dismissed at its cost, and for all general and equitable relief.
The district court rendered the following judgment:
This cause having been submitted for adjudication, and the court considering the law and the evidence to be in favor of defendants, for written reasons assigned and filed this day:
“It is ordered, adjudged, and decreed that there be judgment in favor of defendants, Charles Janvier, H. Green, and George AV. Young, liquidators of the Canal Bank & Trust Company, successor to the Canal Bank, Robert M. AValmsley, Sylvester P. Walmsley, and John F. Couret, liquidators of the Louisiana National Bank, and George Q. Whitney, James T. Hayden, and I. S. West, liquidators of the Whitney National Bank, and against plaintiff, the city of New Orleans, rejecting its demand, and dismissing this suit at its costs, but with reservation of plaintiff’s right on any other cause of action, if any, growing out of the matters herein involved.
“Judgment rendered and-read in open court May 27, 1908.
“Judgment signed in open court June 2, 1908.”
The city has appealed.
The following reasons for judgment were assigned by the district judge:
“The defendant banks, having been accepted as the fiscal agents for the city of New Orleans on their bid of 6% per cent, interest per annum upon the average daily balances to the credit of the city, entered into a contract with the city, appropriate to the purposes of and to carry into effect said fiscal agency, on June 30, 1900. By the terms of the contract, this fiscal agency was to terminate, at the expiration of four years from its date, on June 30, 1904.
“The contract having expired, a new fiscal agent was not elected and inducted into office until March 10, 1905, and from said expiration June 30, 1904, to March 10, 1905, said defendant banks continued to receive the deposits of the city’s funds and to act as fiscal agents. They gave no notice to the city to the contrary, and the city gave no notice to them. This suit for $24,666.79 is the city’s claim for interest on *661 the daily average balances from June 30, 1904, to March 10, 1905, at 6% per cent, per annum, the rate fixed by said expired contract.
“The" causes of action relied on are that by Act No. 12, p. 20, of the General Assembly of 1902, the terms of all the city officers and employes expiring in May, 1904, were extended until the first Monday of December, 1904, the effect of which was to revitalize said contract expiring June 30, 1904, and continue it in force up to the first Monday of December, 1904, and that thereafter by tacit reeonduction it was kept in force until the new fiscal agent succeeded to the trust.
“It does not appear that the mayor and city council, or any officer of the city government, took any formal official action regarding the' expired contract; nor was there any action taken by the bank depositaries. There was no notice that the city would continue to deposit with said banks for a definite period and claim the 6% per cent, interest on its deposits, nor that the banks would pay at said rate, or refuse to pay.
“The testimony of the hanks’ officers is that the banks, after the contract expired, regarded and dealt with the city’s funds as subject to entire withdrawal at any time, and not as if safeguarded by the definite time limit of a contract. It is shown that the legal reserve of the hanks is 25 per cent., and that this reserve is increased to 30 or 40 per cent, according to the amount of the deposits and their liability to withdrawal. It is shown that said banks, as fiscal agents, gave bond in a large amount, with a surety company as security, to safeguard the rights of the city for the contract term of four years, and that after said contract expired no notice was given to the surety company that it would be held as the bondsman of the fiscal agent, nor was any request made of the surety company to continue its obligation as surety of said hanks. Under these conditions of fact, I have reached the conclusion, after careful study of the case, that the liability of the defendants for the contract rate of interest expired with the contract of June 30, 1904.
“Nor do I think that the statute (Act No. 12, p. 20, of 1902) had any effect other than to hold in office the mayor, council, and other city officers until the first Monday of December, 1904. Contracts of the city as a municipal corporation, as to their duration, are regulated by their own terms. They are wholly disconnected with the terms of office of the city officials. They exist and endure, or expire, as may have been contracted, regardless of who may be the persons representing the city government or of any change in the personnel of the administration.
“Aside from these considerations, there is another factor, equitable in its nature, which ought to weigh. It is shown that, when the defendants bid at the extraordinary rate of 6% per cent, interest, they were the depositaries of the funds of the water and sewerage hoard, amounting to $1,800,000. when the contract here in question began, and that, when said contract expired, it had run down to $100,000 by reason of the disbursements required for the execution of the sewerage and drainage work, and on these funds no interest was to be paid, so that, in June, 1904, conditions were very different as affecting the rate of interest which the banks could afford to pay on the ordinary funds of the city.
“Tacit reeonduction, as a rule cf law ;n contracts susceptible of its application, rests upon the presumption that both parties at the expiration of the term are satisfied with conditions and tacitly consent that it should continue in force indefinitely, and until one or the other party should notify the other of the intention to terminate it. It cannot be assumed -from the proofs in this case that the defendant banks were willing, under the changed conditions shown, to continue to pay the contract rate of interest after said contract had expired.
“Now, can it be assumed that the city’s officers could legally consent to let the contract continue in force when the security given by the banks for the faithful discharge of their duties as fiscal agent had been released by the expiration of the term of the contract; for this was an essential of the contract required by law, with which it was out of the power of the city’s officers to dispense.
“Back of ail this, it may be a question whether a municipal corporation whose powers are limited, and a banking corporation, both acting within their charter limits, the one having capacity to act only through enactment of its council and official action of its mayor or other officers, and the other through resolutions of its directors, could thus, by mere acquiescence and nonaction, continue in effect after the expiration of its term, a contract which in all its features is to be regulated by positive and express law. Equitably or legally considered, it seems to me that the defendant banks are not bound.
“On the trial the presidents of the defendant banks, Messrs. Walmsley and Janvier, who testified, stated that their hanks, as a matter of fair dealing, would be willing to pay the city a fair interest on its deposits from June 30, 1904, to March 10, 1905, and 2 per cent, was named. It may he that, ex aequo et bono, interest at a fair rate may be due. So I will leave that issue open and at large, by proper reservation of plaintiff’s rights, if any, in that respect.
“Judgment will be entered in defendant’s favor against plaintiff, rejecting its demand and dismissing this suit at its costs, hut with reservation of plaintiff’s rights in any other cause of action, if any, growing out of the matters herein involved.”
Opinion.
Plaintiff declares upon a “contract,” not upon a “quantum meruit.” It relies upon tacit reeonduction. We do not understand the doctrine of tacit reeonduction to extend to contracts other than those of lease. That *663 that doctrine should apply to any contract whatever, the parties must have,- at the termination of the same, proper and legal authority and capacity to extend the original contract.
From the fact that the parties may have had authority and capacity to create a contract, implied authority and capacity is not necessarily presumed to exist for extending it. Such authority and capacity must not only be shown, hut shown by proper evidence in due form.
“La tacite rceonduction ne peut s’opérer qu’autant que le bailleur et le preneur se trouvent capables de contraeter a l’expiration du premier bail fait avee fixation de durée. Si done a cette époque i’une on l’autre des parties eontraetantes était frappSe d'ineapacité il n’y anrait plus de tacite reconduction possible.” Dailoz, under article 1738, G. N. (J. G. Louage, 537).
“Les baux des biens nationaux et des Stablissements public étant assujetis & certaines formalités il s’ensuit que tant que ces formalités ne sont pas observées il ne peut y avoir de bail par tacite reconduction.” Id.
Tacit reconduction resting upon presumed consent, such consent will not be presumed where conditions existing at the commencement of the contract have materially changed to the prejudice of one of the contracting parties. Tile presumption upon which tacit re-conduction is based is not a presumption “juris et de jure.” We are of the opinion that, if the city had any rights flowing out of the situation, it must be based upon a “quantum meruit,” not a contract. The trial judge has properly so held.
We are of the opinion that the judgment appealed from is correct) and it is hereby affirmed.